**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

Docket Number(s): 14-2141                           Caption [use short title]

Motion for: order holding appeal in abeyance       United States of America v. Newman (Steinberg)

Set forth below precise, complete statement of relief sought:

Mr. Steinberg respectfully requests that his appeal, including

the briefing schedule, be held in abeyance until the government

decides whether to petition for further appellate review in the

lead case, United States v. Newman, No. 13-1837, and

the related case, United States v. Newman (Chiasson),

No. 13-1917, and pending final resolution of such petition(s).

MOVING PARTY: Michael Steinberg                    OPPOSING PARTY: United States of America
  ☐ Plaintiff          ☑ Defendant
  ☑ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: Barry H. Berke                    OPPOSING ATTORNEY: Harry A. Chernoff

[name of attorney, with firm, address, phone number and e-mail]

Kramer Levin Naftalis & Frankel LLP                U.S. Attorney's Office/S.D.N.Y.

1177 Avenue of the Americas, New York, NY 10036    One St. Andrew's Plaza, New York, NY 10007

(212) 715-7560, bberke@kramerlevin.com             (212) 637-2481 harry.chernoff@usdoj.gov

Court-Judge/Agency appealed from: U.S. District Court, S.D.N.Y. - Hon. Richard J. Sullivan

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
  ☑ Yes   ☐ No (explain): _____

Opposing counsel's position on motion:
  ☑ Unopposed ☐ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
  ☐ Yes ☑ No ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has request for relief been made below?          ☐ Yes ☐ No
Has this relief been previously sought in this Court?   ☐ Yes ☐ No
Requested return date and explanation of emergency: _____

Is oral argument on motion requested?   ☑ Yes ☑ No   (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ☑ No   If yes, enter date: _____

**Signature of Moving Attorney:**
/s/ Barry H. Berke          Date: December 19, 2014     Service by: ☑ CM/ECF   ☐ Other [Attach proof of service]

Form T-1080 (rev. 12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,     :

        *Appellee*,    :

     v.     :

     :  No. 14-2141

TODD NEWMAN, ANTHONY CHIASSON, :
JON HORVATH, DANNY KUO,    :  DECLARATION IN SUPPORT
HYUNG G. LIM,    :  OF UNOPPOSED MOTION TO
     :  <u>HOLD APPEAL IN ABEYANCE</u>

        *Defendants*,   :

MICHAEL STEINBERG,    :

       *Defendant-Appellant*. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BARRY H. BERKE, pursuant to 28 U.S.C. § 1746, hereby declares as

follows:

1.     I am an attorney duly admitted to practice law in the State of

New York and before this Court. I am a member of the law firm Kramer Levin

Naftalis & Frankel LLP, counsel for Defendant-Appellant Michael Steinberg in

this appeal. I make this declaration in support of Mr. Steinberg's unopposed

motion for an order holding his appeal in abeyance pending (1) a decision by the

government whether to petition for rehearing, rehearing *en banc* and/or *certiorari*

in *United States v. Newman*, No. 13-1837, and *United States v. Newman*

*(Chiasson)*, No. 13-1917 (collectively, "*Newman*/*Chiasson*") and (2) final resolution of any such petition(s).

2.    The government does not oppose this application.

3.    On August 6, 2014, this Court granted Mr. Steinberg's unopposed motion to hold his appeal in abeyance pending a merits decision in the *Newman*/*Chiasson* case, based on substantial overlapping factual and legal issues.[1] The panel in *Newman*/*Chiasson* issued its decision on December 10, 2014.  *United States v. Newman*, __ F.3d __, 2014 WL 6911278 (2d Cir. Dec. 10, 2014).[2]  That same day, this Court issued an order lifting the stay of Mr. Steinberg's appeal.[3]

4.    Last week, the government moved to extend to January 23, 2015 its time to seek rehearing and/or rehearing *en banc* in *Newman*/*Chiasson*.[4] The government's motion remains *sub judice*.  If the filing deadline is not extended, the government's petition would be due on December 24, 2014.

5.    Mr. Steinberg's first abeyance motion explained the substantial overlap in the factual and legal issues presented by the *Steinberg* and

---

[1]    This Court's order granting Mr. Steinberg's motion is attached hereto as Exhibit A.

[2]    This Court's unanimous December 10, 2014 opinion in the *Newman*/*Chiasson* is attached hereto as Exhibit B.

[3]    This Court's December 10, 2014 order is attached hereto as Exhibit C.

[4]    The government's motion to extend time is attached hereto as Exhibit D.

KL3 2998697.6

*Newman*/*Chiasson* cases.[5]  Factually, the *Newman*/*Chiasson* and *Steinberg* cases

overlapped, because they included the same "tipping chain" of analysts who

obtained the information from other individuals who, in turn, obtained that

information from Dell and Nvidia insiders.  The first abeyance motion further

explained that the cases overlapped legally because the *Steinberg* case presents one

of the exact same grounds for reversal that was squarely presented in the

*Newman*/*Chiasson* appeal:  whether in an insider trading case the government must

prove that a remote tippee defendant knew that the company insider disclosed

confidential information in exchange for a personal benefit.  Ex. E, ¶ 2.

6.     In its December 10, 2014, unanimous opinion in

*Newman*/*Chiasson*, this Court sided with the defendants on the common legal issue

of a tippee's required knowledge, holding that "in order to sustain a conviction for

insider trading, the Government must prove beyond a reasonable doubt that the

tippee knew that an insider disclosed confidential information *and* that he did so in

exchange for a personal benefit."  *Newman*, 2014 WL 6911278, at *1 & *6-8.

Finding that the District Court's jury instruction to the contrary was erroneous and

that the proof was insufficient, this Court ruled that the judgments of conviction of

Newman and Chiasson must be reversed.  *Id.*

---

[5]     Mr. Steinberg's initial motion to hold his appeal in abeyance is attached hereto
as Exhibit E.

KL3 2998697.6

7.    Because the same District Judge gave the same erroneous instruction on this issue at both the *Newman*/*Chiasson* and *Steinberg* trials, *see* Ex. E, ¶¶ 5 & 11, Mr. Steinberg will be entitled to the same relief on the jury charge error.

8.    The *Newman*/*Chiasson* decision further ordered that the indictments against Messrs. Newman and Chiasson be dismissed with prejudice because (1) the evidence was insufficient to show "that the corporate insiders received any personal benefit in exchange for their tips," and without that underlying tipper liability there could be no derivative tippee liability, *Newman*, 2014 WL 6911278, at *10-11, and (2) there was no evidence that the defendants knew that they were trading on information obtained from insiders who had provided that information in exchange for a benefit, *id.* at *11-13.

9.    The panel's decision in *Newman*/*Chiasson* also compels the same relief for Mr. Steinberg.

10.    With respect to whether the insiders received the required benefit in exchange for their tipping, the relevant facts are necessarily identical in the *Newman*/*Chiasson* and *Steinberg* trials and appeals.  In both cases, the alleged underlying breaches of fiduciary duty were based on exactly the same facts:  that an insider at Dell (Rob Ray) breached his duty by sharing confidential information in exchange for career advice from a purported friend, Sandy Goyal, and that an

- 4 -

insider at Nvidia (Chris Choi) breached his duty by sharing nonpublic information in exchange for friendship with Hyung Lim.  The *Newman*/*Chiasson* panel rejected the sufficiency of this evidence of purported benefits.  *Id.* at *10-11.

11.     Because Mr. Steinberg's trial and appeal involve the same insiders and the same purported benefits, the *Newman*/*Chiasson* decision requires that Mr. Steinberg's convictions be reversed and his indictment dismissed with prejudice as well.

12.     The government may elect to seek further review in *Newman*/*Chiasson*.  That provides related grounds for holding Mr. Steinberg's appeal in abeyance again.  First, if the result of the government's decision is that the panel's opinion remains in place (whether because the government decides not to petition for review of *Newman*/*Chiasson*, its petition is denied, or further review results in reinstating or affirming the panel's decision), Mr. Steinberg will receive the same relief for the same reasons, with no need for briefing on other issues, thus saving this Court the need to address Mr. Steinberg's other grounds for reversal.  Second, in the event further review in *Newman*/*Chiasson* modifies the Court's opinion or leads to a different outcome, staying Mr. Steinberg's appeal until such review is completed would allow both parties to address the common issues with the benefit of knowing the law that applies.  An abeyance would also preserve judicial resources by allowing the Court to decide Mr. Steinberg's appeal by

- 5 -

applying the new opinion in *Newman*/*Chiasson* to the identical and overlapping issues that Mr. Steinberg's appeal raises.[6]

13.     In the interest of judicial economy, this Court has held appeals in abeyance where, as here, a factually or legally related and potentially case-dispositive appeal is closer to final resolution. *See, e.g.*, Order, *Pedersen v. Office of Prof'l Mgmt.*, Nos. 12-3273 & 12-3872 (2d Cir. Nov. 28, 2012) (granting motion to hold appeal in abeyance pending disposition of petitions for certiorari in four related cases).[7]  Similarly, other circuit courts have held appeals in abeyance pending post-decision review of an appeal that raises identical legal issues. *See, e.g.*, Order, *Menominee Indian Tribe of Wisc. v. United States*, No. 12-5217 (D.C. Cir. Feb. 15, 2013) (holding appeal in abeyance pending disposition of petition for rehearing *en banc* in Federal Circuit case that presented same legal question).[8]

WHEREFORE, Mr. Steinberg respectfully requests that his appeal, including the briefing schedule, be held in abeyance pending (1) the deadlines for a decision by the government whether to petition for rehearing, rehearing *en banc* and/or *certiorari* in *Newman*/*Chiasson* and, in the event the government elects to file such petition(s), (2) the final non-appealable disposition of any such

---

[6]   In the event full merits briefing is required, Mr. Steinberg intends to present additional arguments for reversal that are not directly relevant to this application.

[7]   The *Pedersen* order is attached hereto as Exhibit F.

[8]   The *Menominee Indian Tribe* order is attached hereto as Exhibit G.

KL3 2998697.6

petition(s). As noted at the outset, the government, by Assistant U.S. Attorney

Harry A. Chernoff, does not oppose this request.

        I declare under penalty of perjury that the foregoing is true and

correct.

Executed on December 19, 2014
New York, New York

                    /s/  Barry H. Berke
                    BARRY H. BERKE
                    *Attorney for Defendant-Appellant*
                        *Michael Steinberg*

# EXHIBIT  A

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of August, two thousand and fourteen.

Before:    Ralph K. Winter,
*Circuit Judge*.

_____

United States of America,
   Appellee,

   v.

Michael Steinberg,
   Defendant-Appellant,

Todd Newman, Danny Kuo, Hyung G. Lim, Jon Horvath, Anthony Chiasson,
   Defendants.

_____

**ORDER**
Docket No. 14-2141

Appellant moves to hold this appeal in abeyance pending the disposition of 13-1837 and 13-1917.

IT IS HEREBY ORDERED that the motion is GRANTED.

For the Court**:**
Catherine O'Hagan Wolfe,
Clerk of Court



# EXHIBIT  B

13-1837-cr (L)
*United States v. Newman and Chiasson*

# In the
# United States Court of Appeals
# For the Second Circuit

————

August Term, 2013

Nos. 13-1837-cr (L), 13-1917-cr (con)

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

TODD NEWMAN, ANTHONY CHIASSON,
*Defendants-Appellants,*

JON HORVATH, DANNY KUO, HYUNG G. LIM, MICHAEL STEINBERG,
*Defendants.*[1]

————

Appeal from the United States District Court
for the Southern District of New York.
No. 12 CR 121(RJS) — Richard J. Sullivan, *Judge.*

————

Argued: April 22, 2014
Decided: December 10, 2014

————

————

[1] The Clerk of Court is directed to amend the caption as set forth above.

Before: WINTER, PARKER, and HALL, *Circuit Judges*.

————

Defendants-appellants Todd Newman and Anthony Chiasson appeal from judgments of conviction entered on May 9, 2013, and May 14, 2013, respectively, in the United States District Court for the Southern District of New York (Richard J. Sullivan, *J.*) following a six-week jury trial on charges of conspiracy to commit insider trading and insider trading in violation of 18 U.S.C. § 371, sections 10(b) and 32 of the Securities Exchange Act of 1934, SEC Rules 10b-5 and 10b5-2, and 18 U.S.C. § 2. Because the Government failed to present sufficient evidence that the defendants willfully engaged in substantive insider trading or a conspiracy to commit insider trading in violation of the federal securities laws, we reverse Newman and Chiasson's convictions and remand with instructions to dismiss the indictment as it pertains to them with prejudice.

————

STEPHEN FISHBEIN (John A. Nathanson, Jason M. Swergold, *on the brief*), Shearman & Sterling LLP, New York, NY, *for Defendant-Appellant Todd Newman*.

MARK F. POMERANTZ (Matthew J. Carhart; Alexandra A.E. Shapiro, Daniel J. O'Neill, Jeremy Licht, Shapiro, Arato & Isserles LLP, New York, NY; Gregory R. Morvillo, Morvillo LLP, New York, NY *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, *for Defendant-Appellant Anthony Chiasson*.

ANTONIA M. APPS (Richard C. Tarlowe, Micah W.J. Smith, Brent S. Wible, *on the brief*), Assistant

> United States Attorneys *for* Preet Bharara, United States Attorney, Southern District of New York, New York, NY, *for Appellee.*
>
> Ira M. Feinberg, Jordan L. Estes, Hagan Scotten, Hogan Lovells US LLP, New York, NY; Joshua L. Dratel, Law Offices of Joshua L. Dratel, P.C., New York, NY, *for Amicus Curiae National Association of Criminal Defense Lawyers.*

————

BARRINGTON D. PARKER, *Circuit Judge*:

Defendants-appellants Todd Newman and Anthony Chiasson appeal from judgments of conviction entered on May 9, 2013, and May 14, 2013, respectively in the United States District Court for the Southern District of New York (Richard J. Sullivan, *J.*) following a six-week jury trial on charges of securities fraud in violation of sections 10(b) and 32 of the Securities Exchange Act of 1934 (the "1934 Act"), 48 Stat. 891, 904 (codified as amended at 15 U.S.C. §§ 78j(b), 78ff), Securities and Exchange Commission (SEC) Rules 10b-5 and 10b5-2 (codified at 17 C.F.R. §§ 240.10b-5, 240.10b5-2), and 18 U.S.C. § 2, and conspiracy to commit securities fraud in violation of 18 U.S.C. § 371.

The Government alleged that a cohort of analysts at various hedge funds and investment firms obtained material, nonpublic information from employees of publicly traded technology companies, shared it amongst each other, and subsequently passed this information to the portfolio managers at their respective companies. The Government charged Newman, a portfolio manager at Diamondback Capital Management, LLC ("Diamondback"), and Chiasson, a portfolio manager at Level

Global Investors, L.P. ("Level Global"), with willfully participating in this insider trading scheme by trading in securities based on the inside information illicitly obtained by this group of analysts.  On appeal, Newman and Chiasson challenge the sufficiency of the evidence as to several elements of the offense, and further argue that the district court erred in failing to instruct the jury that it must find that a tippee knew that the insider disclosed confidential information in exchange for a personal benefit.

We agree that the jury instruction was erroneous because we conclude that, in order to sustain a conviction for insider trading, the Government must prove beyond a reasonable doubt that the tippee knew that an insider disclosed confidential information *and* that he did so in exchange for a personal benefit.  Moreover, we hold that the evidence was insufficient to sustain a guilty verdict against Newman and Chiasson for two reasons.  *First*, the Government's evidence of any personal benefit received by the alleged insiders was insufficient to establish the tipper liability from which defendants' purported tippee liability would derive.  *Second*, even assuming that the scant evidence offered on the issue of personal benefit was sufficient, which we conclude it was not, the Government presented no evidence that Newman and Chiasson knew that they were trading on information obtained from insiders in violation of those insiders' fiduciary duties.

Accordingly, we reverse the convictions of Newman and Chiasson on all counts and remand with instructions to dismiss the indictment as it pertains to them with prejudice.

## BACKGROUND

This case arises from the Government's ongoing investigation into suspected insider trading activity at hedge funds.  On January 18, 2012, the Government unsealed charges against Newman,

Chiasson, and several other investment professionals.  On February 7, 2012, a grand jury returned an indictment.  On August 28, 2012, a twelve-count Superseding Indictment S2 12 Cr. 121 (RJS) (the "Indictment") was filed.  Count One of the Indictment charged Newman, Chiasson, and a co-defendant with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371. Each of Counts Two through Five charged Newman and each of Counts Six through Ten charged Chiasson with securities fraud, in violation of sections 10(b) and 32 of the 1934 Act, SEC Rules 10b-5 and 105b-2, and 18 U.S.C. § 2.  A co-defendant was charged with securities fraud in Counts Eleven and Twelve.

At trial, the Government presented evidence that a group of financial analysts exchanged information they obtained from company insiders, both directly and more often indirectly. Specifically, the Government alleged that these analysts received information from insiders at Dell and NVIDIA disclosing those companies' earnings numbers before they were publicly released in Dell's May 2008 and August 2008 earnings announcements and NVIDIA's May 2008 earnings announcement.  These analysts then passed the inside information to their portfolio managers, including Newman and Chiasson, who, in turn, executed trades in Dell and NVIDIA stock, earning approximately $4 million and $68 million, respectively, in profits for their respective funds.

Newman and Chiasson were several steps removed from the corporate insiders and there was no evidence that either was aware of the source of the inside information.  With respect to the Dell tipping chain, the evidence established that Rob Ray of Dell's investor relations department tipped information regarding Dell's consolidated earnings numbers to Sandy Goyal, an analyst at Neuberger Berman. Goyal in turn gave the information to Diamondback analyst Jesse Tortora.  Tortora in turn relayed the

information to his manager Newman as well as to other analysts including Level Global analyst Spyridon "Sam" Adondakis. Adondakis then passed along the Dell information to Chiasson, making Newman and Chiasson three and four levels removed from the inside tipper, respectively.

With respect to the NVIDIA tipping chain, the evidence established that Chris Choi of NVIDIA's finance unit tipped inside information to Hyung Lim, a former executive at technology companies Broadcom Corp. and Altera Corp., whom Choi knew from church. Lim passed the information to co-defendant Danny Kuo, an analyst at Whittier Trust. Kuo circulated the information to the group of analyst friends, including Tortora and Adondakis, who in turn gave the information to Newman and Chiasson, making Newman and Chiasson four levels removed from the inside tippers.

Although Ray and Choi have yet to be charged administratively, civilly, or criminally for insider trading or any other wrongdoing, the Government charged that Newman and Chiasson were criminally liable for insider trading because, as sophisticated traders, they must have known that information was disclosed by insiders in breach of a fiduciary duty, and not for any legitimate corporate purpose.

At the close of evidence, Newman and Chiasson moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. They argued that there was no evidence that the corporate insiders provided inside information in exchange for a personal benefit which is required to establish tipper liability under *Dirks v. S.E.C.*, 463 U.S. 646 (1983). Because a tippee's liability derives from the liability of the tipper, Newman and Chiasson argued that they could not be found guilty of insider trading. Newman and Chiasson also argued that, even if the corporate

insiders had received a personal benefit in exchange for the inside information, there was no evidence that they knew about any such benefit. Absent such knowledge, appellants argued, they were not aware of, or participants in, the tippers' fraudulent breaches of fiduciary duties to Dell or NVIDIA, and could not be convicted of insider trading under *Dirks*. In the alternative, appellants requested that the court instruct the jury that it must find that Newman and Chiasson knew that the corporate insiders had disclosed confidential information for personal benefit in order to find them guilty.

The district court reserved decision on the Rule 29 motions. With respect to the appellants' requested jury charge, while the district court acknowledged that their position was "supportable certainly by the language of *Dirks*," Tr. 3595:10-12, it ultimately found that it was constrained by this Court's decision in *S.E.C. v. Obus*, 693 F.3d 276 (2d Cir. 2012), which listed the elements of tippee liability without enumerating knowledge of a personal benefit received by the insider as a separate element. Tr. 3604:3-3605:5. Accordingly, the district court did not give Newman and Chiasson's proposed jury instruction. Instead, the district court gave the following instructions on the tippers' intent and the personal benefit requirement:

> Now, if you find that Mr. Ray and/or Mr. Choi had a fiduciary or other relationship of trust and confidence with their employers, then you must next consider whether the [G]overnment has proven beyond a reasonable doubt that they intentionally breached that duty of trust and confidence by disclosing material[,] nonpublic information for their own benefit.

Tr. 4030.

On the issue of the appellants' knowledge, the district court instructed the jury:

> To meet its burden, the [G]overnment must also prove beyond a reasonable doubt that the defendant you are considering knew that the material, nonpublic information had been disclosed by the insider in breach of a duty of trust and confidence. The mere receipt of material, nonpublic information by a defendant, and even trading on that information, is not sufficient; he must have known that it was originally disclosed by the insider in violation of a duty of confidentiality.

Tr. 4033:14-22.

On December 17, 2012, the jury returned a verdict of guilty on all counts.  The district court subsequently denied the appellants' Rule 29 motions.

On May 2, 2013, the district court sentenced Newman to an aggregate term of 54 months' imprisonment, to be followed by one year of supervised release, imposed a $500 mandatory special assessment, and ordered Newman to pay a $1 million fine and to forfeit $737,724.   On May 13, 2013, the district court sentenced Chiasson to an aggregate term of 78 months' imprisonment, to be followed by one year of supervised release, imposed a $600 mandatory special assessment, and ordered him to pay a $5 million fine and forfeiture in an amount not to exceed $2 million.[2]   This appeal followed.

---

[2] The district court subsequently set the forfeiture amount at $1,382,217.

## DISCUSSION

Newman and Chiasson raise a number of arguments on appeal. Because we conclude that the jury instructions were erroneous and that there was insufficient evidence to support the convictions, we address only the arguments relevant to these issues. We review jury instructions *de novo* with regard to whether the jury was misled or inadequately informed about the applicable law. *See United States v. Moran-Toala*, 726 F.3d 334, 344 (2d Cir. 2013).

I.        The Law of Insider Trading

Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), prohibits the use "in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . . ." Although Section 10(b) was designed as a catch-all clause to prevent fraudulent practices, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 202-06 (1976), neither the statute nor the regulations issued pursuant to it, including Rule 10b-5, expressly prohibit insider trading. Rather, the unlawfulness of insider trading is predicated on the notion that insider trading is a type of securities fraud proscribed by Section 10(b) and Rule 10b-5. *See Chiarella v. United States*, 445 U.S. 222, 226-30 (1980).

A.        The "Classical" and "Misappropriation" Theories of Insider Trading

The classical theory holds that a corporate insider (such as an officer or director) violates Section 10(b) and Rule 10b-5 by trading in the corporation's securities on the basis of material, nonpublic information about the corporation. *Id*. at 230. Under this theory, there is a special "relationship of trust and confidence between the shareholders of a corporation and those insiders who have obtained confidential information by reason of their position within that

corporation." *Id*. at 228. As a result of this relationship, corporate insiders that possess material, nonpublic information have "a duty to disclose [or to abstain from trading] because of the 'necessity of preventing a corporate insider from . . . tak[ing] unfair advantage of . . . uninformed . . . stockholders.'" *Id*. at 228-29 (citation omitted).

In accepting this theory of insider trading, the Supreme Court explicitly rejected the notion of "a general duty between all participants in market transactions to forgo actions based on material, nonpublic information." *Id*. at 233. Instead, the Court limited the scope of insider trading liability to situations where the insider had "a duty to disclose arising from a relationship of trust and confidence between parties to a transaction," such as that between corporate officers and shareholders. *Id*. at 230.

An alternative, but overlapping, theory of insider trading liability, commonly called the "misappropriation" theory, expands the scope of insider trading liability to certain other "outsiders," who do not have any fiduciary or other relationship to a corporation or its shareholders. Liability may attach where an "outsider" possesses material non-public information about a corporation and another person uses that information to trade in breach of a duty owed to the owner. *United States v. O'Hagan*, 521 U.S. 642, 652-53 (1997); *United States v. Libera*, 989 F.2d 596, 599-600 (2d Cir. 1993). In other words, such conduct violates Section 10(b) because the misappropriator engages in deception by pretending "loyalty to the principal while secretly converting the principal's information for personal gain." *Obus*, 693 F.3d at 285 (citations omitted).

B.    Tipping Liability

The insider trading case law, however, is not confined to insiders or misappropriators who trade for their own accounts. *Id*. at 285. Courts have expanded insider trading liability to reach situations where the insider or misappropriator in possession of

material nonpublic information (the "tipper") does not himself trade but discloses the information to an outsider (a "tippee") who then trades on the basis of the information before it is publicly disclosed. *See Dirks*, 463 U.S. at 659. The elements of tipping liability are the same, regardless of whether the tipper's duty arises under the "classical" or the "misappropriation" theory. *Obus*, 693 F.3d at 285-86.

In *Dirks*, the Supreme Court addressed the liability of a tippee analyst who received material, nonpublic information about possible fraud at an insurance company from one of the insurance company's former officers. *Dirks*, 463 U.S. at 648-49. The analyst relayed the information to some of his clients who were investors in the insurance company, and some of them, in turn, sold their shares based on the analyst's tip. *Id*. The SEC charged the analyst Dirks with aiding and abetting securities fraud by relaying confidential and material inside information to people who traded the stock.

In reviewing the appeal, the Court articulated the general principle of tipping liability: "Not only are insiders forbidden by their fiduciary relationship from personally using undisclosed corporate information to their advantage, but they may not give such information to an outsider for the same improper purpose of exploiting the information for their personal gain." *Id*. at 659 (citation omitted). The test for determining whether the corporate insider has breached his fiduciary duty "is whether the insider personally will benefit, directly or indirectly, from his disclosure. Absent some personal gain, *there has been no breach of duty . . . ." Id*. at 662 (emphasis added).

The Supreme Court rejected the SEC's theory that a recipient of confidential information (i.e. the "tippee") must refrain from trading "whenever he receives inside information from an insider." *Id*. at 655. Instead, the Court held that "[t]he tippee's duty to

disclose or abstain is derivative from that of the insider's duty." *Id*.
at 659. Because the *tipper's* breach of fiduciary duty requires that he
"personally will benefit, directly or indirectly, from his disclosure,"
*id*. at 662, a tippee may not be held liable in the absence of such
benefit. Moreover, the Supreme Court held that a tippee may be
found liable "only when the insider has breached his fiduciary duty .
. . *and* the tippee knows or should know that there has been a
breach." *Id*. at 660 (emphasis added). In *Dirks*, the corporate insider
provided the confidential information in order to expose a fraud in
the company and not for any personal benefit, and thus, the Court
found that the insider had not breached his duty to the company's
shareholders and that Dirks could not be held liable as tippee.

     E.    *Mens Rea*

     Liability for securities fraud also requires proof that the
defendant acted with scienter, which is defined as "a mental state
embracing intent to deceive, manipulate or defraud." *Hochfelder*, 425
U.S. at 193 n.12. In order to establish a criminal violation of the
securities laws, the Government must show that the defendant acted
"willfully." 15 U.S.C. § 78ff(a). We have defined willfulness in this
context "as a realization on the defendant's part that he was doing a
wrongful act under the securities laws." *United States v. Cassese*, 428
F.3d 92, 98 (2d Cir. 2005) (internal quotation marks and citations
omitted); *see also United States v. Dixon*, 536 F.2d 1388, 1395 (2d Cir.
1976) (holding that to establish willfulness, the Government must
"establish a realization on the defendant's part that he was doing a
wrongful act . . . under the securities laws" and that such an act
"involve[d] a significant risk of effecting the violation that
occurred.") (quotation omitted).

II.    The Requirements of Tippee Liability

     The Government concedes that tippee liability requires proof
of a personal benefit to the insider. Gov't Br. 56. However, the

Case 13-1837, Document 262-1, 12/10/2014, 1389615, Page 13 of 28
Case 14-2141, Document 28, 12/19/2014, 1399454, Page24 of 61

13                                    Nos. 13-1837-cr; 13-1917-cr

Government argues that it was not required to prove that Newman and Chiasson knew that the insiders at Dell and NVIDIA received a personal benefit in order to be found guilty of insider trading. Instead, the Government contends, consistent with the district court's instruction, that it merely needed to prove that the "defendants traded on material, nonpublic information they knew insiders had disclosed in breach of a duty of confidentiality . . . ." Gov't Br. 58.

In support of this position, the Government cites *Dirks* for the proposition that the Supreme Court only required that the "tippee know that the tipper disclosed information in *breach of a duty*." *Id.* at 40 (citing *Dirks*, 463 U.S. at 660) (emphasis added). In addition, the Government relies on dicta in a number of our decisions post-*Dirks*, in which we have described the elements of tippee liability without specifically stating that the Government must prove that the tippee knew that the corporate insider who disclosed confidential information did so for his own personal benefit. *Id.* at 41-44 (citing, *inter alia*, *United States v. Jiau*, 734 F.3d 147, 152-53 (2d Cir. 2013); *Obus*, 693 F.3d at 289; *S.E.C. v. Warde*, 151 F.3d 42, 48-49 (2d Cir. 1998)). By selectively parsing this dictum, the Government seeks to revive the absolute bar on tippee trading that the Supreme Court explicitly rejected in *Dirks*.

Although this Court has been accused of being "somewhat Delphic" in our discussion of what is required to demonstrate tippee liability, *United States v. Whitman*, 904 F. Supp. 2d 363, 371 n.6 (S.D.N.Y. 2012), the Supreme Court was quite clear in *Dirks*. *First*, the tippee's liability derives *only* from the tipper's breach of a fiduciary duty, *not* from trading on material, non-public information. *See Chiarella*, 445 U.S. at 233 (noting that there is no "general duty between all participants in market transactions to forgo actions based on material, nonpublic information"). *Second*, the corporate insider has committed no breach of fiduciary duty

unless he receives a personal benefit in exchange for the disclosure. *Third*, even in the presence of a tipper's breach, a tippee is liable only if he knows or should have known of the breach.

While we have not yet been presented with the question of whether the tippee's knowledge of a tipper's breach requires knowledge of the tipper's personal benefit, the answer follows naturally from *Dirks*. *Dirks* counsels us that the exchange of confidential information for personal benefit is not separate from an insider's fiduciary breach; it *is* the fiduciary breach that triggers liability for securities fraud under Rule 10b-5. For purposes of insider trading liability, the insider's disclosure of confidential information, standing alone, is not a breach. Thus, without establishing that the tippee knows of the personal benefit received by the insider in exchange for the disclosure, the Government cannot meet its burden of showing that the tippee knew of a breach.

The Government's overreliance on our prior dicta merely highlights the doctrinal novelty of its recent insider trading prosecutions, which are increasingly targeted at remote tippees many levels removed from corporate insiders. By contrast, our prior cases generally involved tippees who directly participated in the tipper's breach (and therefore had knowledge of the tipper's disclosure for personal benefit) or tippees who were explicitly apprised of the tipper's gain by an intermediary tippee. *See, e.g.*, *Jiau*, 734 F.3d at 150 ("To provide an incentive, Jiau promised the tippers insider information for their own private trading."); *United States v. Falcone*, 257 F.3d 226, 235 (2d Cir. 2001) (affirming conviction of remote tipper where intermediary tippee paid the inside tipper and had told remote tipper "the details of the scheme"); *Warde*, 151 F.3d at 49 (tipper and tippee engaged in parallel trading of the inside information and "discussed not only the inside information, but also the best way to profit from it"); *United States v. Mylett*, 97 F.3d 663 (2d Cir. 1996) (tippee acquired

inside information directly from his insider friend).  We note that the Government has not cited, nor have we found, a single case in which tippees as remote as Newman and Chiasson have been held criminally liable for insider trading.

*Jiau* illustrates the importance of this distinction quite clearly. In *Jiau*, the panel was presented with the question of whether the evidence at trial was sufficient to prove that the tippers personally benefitted from their disclosure of insider information.  In that context, we summarized the elements of criminal liability as follows:

> (1) the insider-tippers . . . were entrusted the duty to protect confidential information, which (2) they breached by disclosing [the information] to their tippee . . . , who (3) knew of [the tippers'] duty and (4) still used the information to trade a security or further tip the information for [the tippee's] benefit, and finally (5) the insider-tippers benefited in some way from their disclosure.

*Jiau*, 734 F.3d at 152-53 (citing *Dirks*, 463 U.S. at 659-64; *Obus*, 693 F. 3d at 289).  The Government relies on this language to argue that *Jiau* is merely the most recent in a string of cases in which this Court has found that a tippee, in order to be criminally liable for insider trading, need know only that an insider-tipper disclosed information in breach of a duty of confidentiality.  Gov't Br. 43. However, we reject the Government's position that our cursory recitation of the elements in *Jiau* suggests that criminal liability may be imposed on a defendant based only on knowledge of a breach of a duty of confidentiality.  In *Jiau*, the defendant knew about the benefit because she provided it.  For that reason, we had no need to reach the question of whether knowledge of a breach requires that a tippee know that a personal benefit was provided to the tipper.

In light of *Dirks*, we find no support for the Government's contention that knowledge of a breach of the duty of confidentiality

Case 13-1837, Document 262-1, 12/10/2014, 1389615, Page 16 of 28

without knowledge of the personal benefit is sufficient to impose criminal liability.  Although the Government might like the law to be different, nothing in the law requires a symmetry of information in the nation's securities markets.  The Supreme Court explicitly repudiated this premise not only in *Dirks*, but in a predecessor case, *Chiarella v. United States*.  In *Chiarella*, the Supreme Court rejected this Circuit's conclusion that "the federal securities laws have created a system providing equal access to information necessary for reasoned and intelligent investment decisions . . . . because [material non-public] information gives certain buyers or sellers an unfair advantage over less informed buyers and sellers."  445 U.S. at 232.  The Supreme Court emphasized that "[t]his reasoning suffers from [a] defect. . . . [because] not every instance of financial unfairness constitutes fraudulent activity under § 10(b)."  *Id*.  *See also United States v. Chestman*, 947 F.2d 551, 578 (2d Cir. 1991) (Winter, J., concurring) ("[The policy rationale [for prohibiting insider trading] stops well short of prohibiting all trading on material nonpublic information. Efficient capital markets depend on the protection of property rights in information.  However, they also require that persons who acquire and act on information about companies be able to profit from the information they generate . . . .").  Thus, in both *Chiarella* and *Dirks*, the Supreme Court affirmatively established that insider trading liability is based on breaches of fiduciary duty, not on informational asymmetries.  This is a critical limitation on insider trading liability that protects a corporation's interests in confidentiality while promoting efficiency in the nation's securities markets.

As noted above, *Dirks* clearly defines a breach of fiduciary duty as a breach of the duty of confidentiality in exchange for a personal benefit.  *See Dirks*, 463 U.S. at 662.  Accordingly, we conclude that a tippee's knowledge of the insider's breach necessarily requires knowledge that the insider disclosed

confidential information in exchange for personal benefit.   In
reaching this conclusion, we join every other district court to our
knowledge – apart from Judge Sullivan[3] – that has confronted this
question.   *Compare United States v. Rengan Rajaratnam*, No. 13-211
(S.D.N.Y. July 1, 2014) (Buchwald, *J.*); *United States v. Martoma*, No.
12-973 (S.D.N.Y. Feb. 4, 2014) (Gardephe, *J.*); *United States v.
Whitman*, 904 F. Supp. 2d 363, 371 (S.D.N.Y. 2012) (Rakoff, *J.*); *United
States v. Raj Rajaratnam*, 802 F. Supp. 2d 491, 499 (S.D.N.Y. 2011)
(Holwell, *J.*); *State Teachers Retirement Bd. v. Fluor Corp.*, 592 F. Supp.
592, 594 (S.D.N.Y. 1984) (Sweet, *J.*),[4] *with United States v. Steinberg*,
No. 12-121, 2014 WL 2011685 at *5 (S.D.N.Y. May 15, 2014) (Sullivan,
*J.*), and *United States v. Newman*, No. 12-121 (S.D.N.Y. Dec. 6, 2012)
(Sullivan, *J.*).[5]

---

[3] Although the Government argues that district court decisions in *S.E.C. v. Thrasher*, 152
F. Supp. 2d 291 (S.D.N.Y. 2001) and *S.E.C. v. Musella*, 678 F. Supp. 1060 (S.D.N.Y. 1988)
support their position, these cases merely stand for the unremarkable proposition that
a tippee does not need to know the details of the insider's disclosure of information.  The
district courts determined that the tippee did not have to know for certain how
information was disclosed, *Thrasher*, 152 F. Supp. 2d at 304-05, nor the identity of the
insiders, *Musella*, 678 F. Supp. at 1062-63.  This is not inconsistent with a requirement that
a defendant tippee understands that some benefit is being provided in return for the
information.

[4] *See also United States v. Santoro*, 647 F. Supp. 153, 170-71 (E.D.N.Y. 1986) ("An allegation
that the tippee knew of the tipper's breach necessarily charges that the tippee knew that
the tipper was acting for personal gain.") *rev'd on other grounds sub nom. United States v.
Davidoff*, 845 F.2d 1151 (2d Cir. 1988); *Hernandez v. United States*, 450 F. Supp. 2d 1112,
1118 (C.D. Cal. 2006) ("[U]nder the standard set forth in *Dirks*" a tippee can be liable
under Section 10(b) and Rule 10(b)-5 "if the tippee had knowledge of the insider-tipper's
personal gain.").

[5] We note that Judge Sullivan had an opportunity to address the issue in *Steinberg* only
because the Government chose to charge Matthew Steinberg in the same criminal case as
Newman and Chiasson by filing a superseding indictment.  Notably, the Government
superseded to add Steinberg on March 29, 2013, after the conclusion of the *Newman* trial,
after Judge Sullivan refused to give the defendants' requested charge on scienter now at
issue on this appeal, and at a time when there was no possibility of a joint trial with the
*Newman* defendants.

Case 13-1837, Document 262-1, 12/10/2014, 1389615, Page 18 of 28
Case 14-2141, Document 28, 12/19/2014, 1399454, Page29 of 61

18                                    Nos. 13-1837-cr; 13-1917-cr

Our conclusion also comports with well-settled principles of substantive criminal law.  As the Supreme Court explained in *Staples v. United States*, 511 U.S. 600, 605 (1994), under the common law, *mens rea,* which requires that the defendant know the facts that make his conduct illegal, is a necessary element in every crime.  Such a requirement is particularly appropriate in insider trading cases where we have acknowledged "it is easy to imagine a . . . trader who receives a tip and is unaware that his conduct was illegal and therefore wrongful." *United States v. Kaiser*, 609 F.3d 556, 569 (2d Cir. 2010).  This is also a statutory requirement, because only "willful" violations are subject to criminal provision.  *See United States v. Temple*, 447 F.3d 130, 137 (2d Cir. 2006) ("'Willful' repeatedly has been defined in the criminal context as intentional, purposeful, and voluntary, as distinguished from accidental or negligent").

In sum, we hold that to sustain an insider trading conviction against a tippee, the Government must prove each of the following elements beyond a reasonable doubt: that (1) the corporate insider was entrusted with a fiduciary duty; (2) the corporate insider breached his fiduciary duty by (a) disclosing confidential information to a tippee (b) in exchange for a personal benefit; (3) the tippee knew of the tipper's breach, that is, he knew the information was confidential and divulged for personal benefit; and (4) the tippee still used that information to trade in a security or tip another individual for personal benefit.  *See Jiau*, 734 F.3d at 152-53; *Dirks*, 463 U.S. at 659-64.

In view of this conclusion, we find, reviewing the charge as a whole, *United States v. Mitchell*, 328 F.3d 77, 82 (2d Cir. 2003), that the district court's instruction failed to accurately advise the jury of the law.  The district court charged the jury that the Government had to prove: (1) that the insiders had a "fiduciary or other relationship of trust and confidence" with their corporations; (2) that they "breached that duty of trust and confidence by disclosing material,

nonpublic information"; (3) that they "personally benefited in some way" from the disclosure; (4) "that the defendant . . . knew the information he obtained had been disclosed in breach of a duty"; and (5) that the defendant used the information to purchase a security.  Under these instructions, a reasonable juror might have concluded that a defendant could be criminally liable for insider trading merely if such defendant knew that an insider had divulged information that was required to be kept confidential.  But a breach of the duty of confidentiality is not fraudulent unless the tipper acts for personal benefit, that is to say, there is no breach unless the tipper "is in effect selling the information to its recipient for cash, reciprocal information, or other things of value for himself. . . ." *Dirks*, 463 U.S. at 664 (quotation omitted).  Thus, the district court was required to instruct the jury that the Government had to prove beyond a reasonable doubt that Newman and Chiasson knew that the tippers received a personal benefit for their disclosure.

The Government argues that any possible instructional error was harmless because the jury could have found that Newman and Chiasson inferred from the circumstances that some benefit was provided to (or anticipated by) the insiders. Gov't Br. 60.  We disagree.

An instructional error is harmless only if the Government demonstrates that it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error[.]"  *Neder v. United States,* 527 U.S. 1, 17-18 (1999); *accord Moran-Toala*, 726 F.3d at 345; *United States v. Quattrone*, 441 F.3d 153, 180 (2d Cir. 2006).  The harmless error inquiry requires us to view whether the evidence introduced was "uncontested and supported by overwhelming evidence" such that it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."  *Neder*, 527 U.S. at 18.  Here both Chiasson and Newman contested their knowledge of any benefit received by the

tippers and, in fact, elicited evidence sufficient to support a contrary finding. Moreover, we conclude that the Government's evidence of any personal benefit received by the insiders was insufficient to establish tipper liability from which Chiasson and Newman's purported tippee liability would derive.

III.    Insufficiency of the Evidence

As a general matter, a defendant challenging the sufficiency of the evidence bears a heavy burden, as the standard of review is exceedingly deferential. *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012). Specifically, we "must view the evidence in the light most favorable to the Government, crediting every inference that could have been drawn in the Government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *Id.* (citing *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008)). Although sufficiency review is *de novo*, we will uphold the judgments of conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *United States v. Yannotti*, 541 F.3d 112, 120 (2d Cir. 2008) (emphasis omitted); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review draws no distinction between direct and circumstantial evidence. The Government is entitled to prove its case solely through circumstantial evidence, provided, of course, that the Government still demonstrates each element of the charged offense beyond a reasonable doubt. *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008).

However, if the evidence "is nonexistent or so meager," *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999), such that it "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt," *Cassese*, 428 F.3d at 99. Because few events in the life of an individual are more important than a criminal

conviction, we continue to consider the "beyond a reasonable doubt" requirement with utmost seriousness.  *Cassese*, 428 F.3d at 102.  Here, we find that the Government's evidence failed to reach that threshold, even when viewed in the light most favorable to it.

The circumstantial evidence in this case was simply too thin to warrant the inference that the corporate insiders received any personal benefit in exchange for their tips.  As to the Dell tips, the Government established that Goyal and Ray were not "close" friends, but had known each other for years, having both attended business school and worked at Dell together.  Further, Ray, who wanted to become a Wall Street analyst like Goyal, sought career advice and assistance from Goyal.  The evidence further showed that Goyal advised Ray on a range of topics, from discussing the qualifying examination in order to become a financial analyst to editing Ray's résumé and sending it to a Wall Street recruiter, and that some of this assistance began before Ray began to provide tips about Dell's earnings.  The evidence also established that Lim and Choi were "family friends" that had met through church and occasionally socialized together.  The Government argues that these facts were sufficient to prove that the tippers derived some benefit from the tip.  We disagree.  If this was a "benefit," practically anything would qualify.

We have observed that "[p]ersonal benefit is broadly defined to include not only pecuniary gain, but also, *inter alia*, any reputational benefit that will translate into future earnings and the benefit one would obtain from simply making a gift of confidential information to a trading relative or friend." *Jiau*, 734 F. 3d at 153 (internal citations, alterations, and quotation marks deleted). This standard, although permissive, does not suggest that the Government may prove the receipt of a personal benefit by the mere fact of a friendship, particularly of a casual or social nature.  If that were true, and the Government was allowed to meet its burden by

proving that two individuals were alumni of the same school or attended the same church, the personal benefit requirement would be a nullity. To the extent *Dirks* suggests that a personal benefit may be inferred from a personal relationship between the tipper and tippee, where the tippee's trades "resemble trading by the insider himself followed by a gift of the profits to the recipient," *see* 643 U.S. at 664, we hold that such an inference is impermissible in the absence of proof of a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature.  In other words, as Judge Walker noted in *Jiau*, this requires evidence of "a relationship between the insider and the recipient that suggests a *quid pro quo* from the latter, or an intention to benefit the [latter]." *Jiau*, 734 F. 3d at 153.

While our case law at times emphasizes language from *Dirks* indicating that the tipper's gain need not be *immediately* pecuniary, it does not erode the fundamental insight that, in order to form the basis for a fraudulent breach, the personal benefit received in exchange for confidential information must be of some consequence. For example, in *Jiau*, we noted that at least one of the corporate insiders received something more than the ephemeral benefit of the "value[] [of] [Jiau's] friendship" because he also obtained access to an investment club where stock tips and insight were routinely discussed.  *Id*.  Thus, by joining the investment club, the tipper entered into a relationship of *quid quo pro* with Jiau, and therefore had the opportunity to access information that could yield future pecuniary gain.  *Id*; s*ee also SEC v. Yun*, 327 F.3d 1263, 1280 (11th Cir. 2003) (finding evidence of personal benefit where tipper and tippee worked closely together in real estate deals and commonly split commissions on various real estate transactions); *SEC v. Sargent*, 229 F.3d 68, 77 (1st Cir. 2000) (finding evidence of personal benefit when

the tipper passed information to a friend who referred others to the tipper for dental work).

Here the "career advice" that Goyal gave Ray, the Dell tipper, was little more than the encouragement one would generally expect of a fellow alumnus or casual acquaintance. *See, e.g.*, J. A. 2080 (offering "minor suggestions" on a resume), J.A. 2082 (offering advice prior to an informational interview). Crucially, Goyal testified that he would have given Ray advice without receiving information because he routinely did so for industry colleagues. Although the Government argues that the jury could have reasonably inferred from the evidence that Ray and Goyal swapped career advice for inside information, Ray himself disavowed that any such *quid pro quo* existed. Further, the evidence showed Goyal began giving Ray "career advice" over a year before Ray began providing any insider information. Tr. 1514. Thus, it would not be possible under the circumstances for a jury in a criminal trial to find beyond a reasonable doubt that Ray received a personal benefit in exchange for the disclosure of confidential information. *See, e.g.*, *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994) (evidence must be sufficient to "reasonably infer" guilt).

The evidence of personal benefit was even more scant in the NVIDIA chain. Choi and Lim were merely casual acquaintances. The evidence did not establish a history of loans or personal favors between the two. During cross examination, Lim testified that he did not provide anything of value to Choi in exchange for the information. Tr. 3067-68. Lim further testified that Choi did not know that Lim was trading NVIDIA stock (and in fact for the relevant period Lim did not trade stock), thus undermining any inference that Choi intended to make a "gift" of the profits earned on any transaction based on confidential information.

Even assuming that the scant evidence described above was sufficient to permit the inference of a personal benefit, which we conclude it was not, the Government presented absolutely no testimony or any other evidence that Newman and Chiasson knew that they were trading on information obtained from insiders, or that those insiders received any benefit in exchange for such disclosures, or even that Newman and Chiasson consciously avoided learning of these facts.    As discussed above, the Government is required to prove beyond a reasonable doubt that Newman and Chiasson knew that the insiders received a personal benefit in exchange for disclosing confidential information.

It is largely uncontroverted that Chiasson and Newman, and even their analysts, who testified as cooperating witnesses for the Government, knew next to nothing about the insiders and nothing about what, if any, personal benefit had been provided to them. Adondakis said that he did not know what the relationship between the insider and the first-level tippee was, nor was he aware of any personal benefits exchanged for the information, nor did he communicate any such information to Chiasson.    Adondakis testified that he merely told Chiasson that Goyal "was talking to someone within Dell," and that a friend of a friend of Tortora's would be getting NVIDIA information.  Tr. 1708, 1878.  Adondakis further testified that he did not specifically tell Chiasson that the source of the NVIDIA information worked at NVIDIA.  Similarly, Tortora testified that, while he was aware Goyal received information from someone at Dell who had access to "overall" financial numbers, he was not aware of the insider's name, or position, or the circumstances of how Goyal obtained the information.  Tortora further testified that he did not know whether Choi received a personal benefit for disclosing inside information regarding NVIDIA.

Case 13-1837, Document 262-1, 12/10/2014, 1389615, Page 25 of 28
Case 14-2141, Document 28, 12/19/2014, 1399454, Page36 of 61

25                                    Nos. 13-1837-cr; 13-1917-cr

The Government now invites us to conclude that the jury could have found that the appellants knew the insiders disclosed the information "for some personal reason rather than for no reason at all." Gov't Br. 65. But the Supreme Court affirmatively rejected the premise that a tipper who discloses confidential information necessarily does so to receive a personal benefit. *See Dirks*, 463 U.S. at 661-62 ("All disclosures of confidential corporate information are not inconsistent with the duty insiders owe to shareholders"). Moreover, it is inconceivable that a jury could conclude, beyond a reasonable doubt, that Newman and Chiasson were aware of a personal benefit, when Adondakis and Tortora, who were more intimately involved in the insider trading scheme as part of the "corrupt" analyst group, disavowed any such knowledge.

Alternatively, the Government contends that the specificity, timing, and frequency of the updates provided to Newman and Chiasson about Dell and NVIDIA were so "overwhelmingly suspicious" that they warranted various material inferences that could support a guilty verdict. Gov't Br. 65. Newman and Chiasson received four updates on Dell's earnings numbers in the weeks leading up to its August 2008 earnings announcement. Similarly, Newman and Chiasson received multiple updates on NVIDIA's earnings numbers between the close of the quarter and the company's earnings announcement. The Government argues that given the detailed nature and accuracy of these updates, Newman and Chiasson must have known, or deliberately avoided knowing, that the information originated with corporate insiders, *and* that those insiders disclosed the information in exchange for a personal benefit. We disagree.

Even viewed in the light most favorable to the Government, the evidence presented at trial undermined the inference of knowledge in several ways. The evidence established that analysts at hedge funds routinely estimate metrics such as revenue, gross

margin, operating margin, and earnings per share through
legitimate financial modeling using publicly available information
and educated assumptions about industry and company trends. For
example, on cross-examination, cooperating witness Goyal testified
that under his financial model on Dell, when he ran the model in
January 2008 without any inside information, he calculated May
2008 quarter results of $16.071 billion revenue, 18.5% gross margin,
and $0.38 earnings per share. Tr. 1566. These estimates came very
close to Dell's reported earnings of $16.077 billion revenue; 18.4%
gross margin, and $0.38 earnings per share. Appellants also elicited
testimony from the cooperating witnesses and investor relations
associates that analysts routinely solicited information from
companies in order to check assumptions in their models in advance
of earnings announcements. Goyal testified that he frequently spoke
to internal relations departments to run his model by them and ask
whether his assumptions were "too high or too low" or in the "ball
park," which suggests analysts routinely updated numbers in
advance of the earnings announcements. Tr. 1511. Ray's supervisor
confirmed that investor relations departments routinely assisted
analysts with developing their models

Moreover, the evidence established that NVIDIA and Dell's
investor relations personnel routinely "leaked" earnings data in
advance of quarterly earnings. Appellants introduced examples in
which Dell insiders, including the head of Investor Relations, Lynn
Tyson, selectively disclosed confidential quarterly financial
information arguably similar to the inside information disclosed by
Ray and Choi to establish relationships with financial firms who
might be in a position to buy Dell's stock. For example, appellants
introduced an email Tortora sent Newman summarizing a
conversation he had with Tyson in which she suggested "low 12%
opex [was] reasonable" for Dell's upcoming quarter and that she

was "fairly confident on [operating margin] and [gross margin]."
Tr. 568:18-581:23.

No reasonable jury could have found beyond a reasonable
doubt that Newman and Chiasson knew, or deliberately avoided
knowing, that the information originated with corporate insiders.  In
general, information about a firm's finances could certainly be
sufficiently detailed and proprietary to permit the inference that the
tippee knew that the information came from an inside source.  But in
this case, where the financial information is of a nature regularly and
accurately predicted by analyst modeling, and the tippees are
several levels removed from the source, the inference that
defendants knew, or should have known, that the information
originated with a corporate insider is unwarranted.

Moreover, even if detail and specificity could support an
inference as to the *nature* of the source, it cannot, without more,
permit an inference as to that source's improper *motive* for
disclosure.  That is especially true here, where the evidence showed
that corporate insiders at Dell and NVIDIA regularly engaged with
analysts and routinely selectively disclosed the same type of
information.  Thus, in light of the testimony (much of which was
adduced from the Government's own witnesses) about the accuracy
of the analysts' estimates and the selective disclosures by the
companies themselves, no rational jury would find that the tips were
so overwhelmingly suspicious that Newman and Chiasson either
knew or consciously avoided knowing that the information came
from corporate insiders or that those insiders received any personal
benefit in exchange for the disclosure.

In short, the bare facts in support of the Government's theory
of the case are as consistent with an inference of innocence as one of
guilt.  Where the evidence viewed in the light most favorable to the
prosecution gives equal or nearly equal circumstantial support to a

theory of innocence as a theory of guilt, that evidence necessarily fails to establish guilt beyond a reasonable doubt. *See United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002). Because the Government failed to demonstrate that Newman and Chiasson had the intent to commit insider trading, it cannot sustain the convictions on either the substantive insider trading counts or the conspiracy count. *United States v. Gaviria*, 740 F.2d 174, 183 (2d Cir. 1984) ("[W]here the crime charged is conspiracy, a conviction cannot be sustained unless the Government establishes beyond a reasonable doubt that the defendant had the specific intent to violate the substantive statute.") (internal quotation marks omitted). Consequently, we reverse Newman and Chiasson's convictions and remand with instructions to dismiss the indictment as it pertains to them.

## CONCLUSION

For the foregoing reasons, we vacate the convictions and remand for the district court to dismiss the indictment with prejudice as it pertains to Newman and Chiasson.

# EXHIBIT  C

# UNITED STATES COURT OF APPEALS
# FOR THE
# SECOND CIRCUIT

_____

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of December, two thousand and fourteen.

_____

United States of America,
    Appellee,

    v.

Michael Steinberg,
    Defendant-Appellant,

Todd Newman, *et al.*,
    Defendants.

**ORDER**
Docket No. 14-2141

_____

By order entered on August 6, 2014, this Court granted a motion by Appellant to hold this appeal in abeyance pending the disposition of the appeals in 13-1837 and 13-1917.

A final disposition having been entered in 13-1837 and 13-1917 on December 10, 2014, IT IS HEREBY ORDERED that the stay of this appeal is lifted.

For the Court:
Catherine O'Hagan Wolfe,
Clerk of Court



# EXHIBIT  D

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**
Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

**Docket Number(s)**: 13-1837(L), 13-1917(CON)                           Caption [use short title]

**Motion for:** Extension of time to petition for panel/en banc rehearing

United States of America v. Newman and Chiasson

Set forth below precise, complete statement of relief sought:

Extension until January 23, 2015 of time to petition for panel/en banc rehearing

_____

_____

_____

_____

**MOVING PARTY:** United States of America                **OPPOSING PARTY:** Todd Newman and Anthony Chiasson
- [ ] Plaintiff          - [ ] Defendant
- [ ] Appellant/Petitioner  - [✓] Appellee/Respondent

**MOVING ATTORNEY:** Preet Bharara, U.S. Attorney, Southern District of New York    **OPPOSING ATTORNEY:** John Nathanson, Esq.; Mark Pomerantz, Esq.

[name of attorney, with firm, address, phone number and e-mail]

By: Michael A. Levy, Assistant U.S. Attorney

One St. Andrew's Plaza, New York, New York 10007

(212) 637-2346

E-mail:michael.levy@usdoj.gov

Court-Judge/Agency appealed from: United States District Court for the Southern District of New York; the Honorable Richard J. Sullivan

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
- [✓] Yes [ ] No (explain):_____

Opposing counsel's position on motion:
- [✓] Unopposed [ ] Opposed [ ] Don't Know
Does opposing counsel intend to file a response:
- [ ] Yes [✓] No [ ] Don't Know

Is oral argument on motion requested?    [ ] Yes [✓] No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?    [ ] Yes [✓] No  If yes, enter date:_____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has request for relief been made below?    [ ] Yes [ ] No
Has this relief been previously sought in this Court?    [ ] Yes [ ] No
Requested return date and explanation of emergency:_____

**Signature of Moving Attorney:**
/s/ Michael A. Levy          **Date:** 12/12/14          Has service been effected? [✓] Yes [ ] No [Attach proof of service]

**ORDER**

**IT IS HEREBY ORDERED THAT** the motion is **GRANTED  DENIED**.

**FOR THE COURT:**
CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: _____          By: _____

**Form T-1080**

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
- - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA,                :

        Appellee,                       :       **AFFIRMATION**

         - v.-                        :       Docket Nos. 13-1837(L),
                            :       13-1917(CON)

TODD NEWMAN and ANTHONY CHIASSON,         :

        Defendants-Appellants.          :
- - - - - - - - - - - - - - - - - X


STATE OF NEW YORK               )
COUNTY OF NEW YORK              :    ss.:
SOUTHERN DISTRICT OF NEW YORK )

     MICHAEL A. LEVY, pursuant to Title 28, United States Code,
Section 1746, hereby affirms under penalty of perjury:

     1.    I am an Assistant United States Attorney in the
Office of Preet Bharara, United States Attorney for the Southern
District of New York. I am one of the attorneys representing the
Government on this appeal. I respectfully submit this affirmation
in support of the Government's motion for an extension of time within
which to file any petition for panel rehearing and/or rehearing *en
banc*. Specifically, the Government requests an extension of 30 days
from December 24, 2014 – the date on which such a petition would
otherwise be due – until January 23, 2015.

     2.    On December 10, 2014, this Court issued an opinion
reversing the convictions of defendants Todd Newman and Anthony
Chiasson.

3.     Pursuant to Rules 35(c) and 40 of the Federal Rules of Appellate Procedure, the Government has 14 days from December 10, 2014 within which to file any petition for panel rehearing and/or rehearing *en banc*. Accordingly, any such petition would normally be due on December 24, 2014.

4.     The Government is in the process of conferring internally and with the Office of the Solicitor General concerning the issue of petitioning for panel rehearing and/or rehearing *en banc*. This process, however, will take longer than the 14-day period set forth in Rules 35(c) and 40. Accordingly, the Government respectfully requests a 30-day extension, until January 23, 2015, of the time within which to file any petition for panel rehearing and/or rehearing *en banc*.

5.     I have communicated with counsel for both defendants and have been informed that both defendants consent to the relief requested by the Government.

6.     Accordingly, for the foregoing reasons, the Government respectfully requests that its time to file a petition for panel rehearing and/or rehearing *en banc* be extended until January 23, 2015.

Dated:     New York, New York
           December 12, 2014

                                   /s/ Michael A. Levy
                                   MICHAEL A. LEVY
                                   Assistant United States Attorney

2

# EXHIBIT  E

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
**Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

## MOTION INFORMATION STATEMENT

**Docket Number(s):** 14-2141                                    Caption [use short title]

**Motion for:** order holding appeal in abeyance          United States of America v. Newman (Steinberg)

Set forth below precise, complete statement of relief sought:

Mr. Steinberg respectfully requests that his
appeal, including the briefing schedule, be held
in abeyance until this Court decides the lead
case, United States v. Newman, No. 13-1837,
and the related case, United States v. Newman
(Chiasson), No. 13-1917.

**MOVING PARTY:** Michael Steinberg               **OPPOSING PARTY:** United States of America

☐ Plaintiff          ☑ Defendant
☑ Appellant/Petitioner     ☐ Appellee/Respondent

**MOVING ATTORNEY:** Barry H. Berke          **OPPOSING ATTORNEY:** Harry A. Chernoff

[name of attorney, with firm, address, phone number and e-mail]

Kramer Levin Naftalis & Frankel LLP          U.S. Attorney's Office/S.D.N.Y.

1177 Avenue of the Americas, New York, NY 10036     One St. Andrew's Plaza, New York, NY 10007

(212) 715-7560, bberke@kramerlevin.com     (212) 637-2481 harry.chernoff@usdoj.gov

Court-Judge/Agency appealed from: U.S. District Court, S.D.N.Y. - Hon. Richard J. Sullivan

**Please check appropriate boxes:**                    **FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has movant notified opposing counsel (required by Local Rule 27.1):     Has request for relief been made below?         ☐ Yes ☐ No
☑ Yes ☐ No (explain): _____           Has this relief been previously sought in this Court?    ☐ Yes ☐ No
                                Requested return date and explanation of emergency:

Opposing counsel's position on motion:
☑ Unopposed ☐ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☑ No ☐ Don't Know

Is oral argument on motion requested?  ☐ Yes ☑ No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes ☑ No  If yes, enter date: _____

**Signature of Moving Attorney:**
/s/ Barry H. Berke          **Date:** August 5, 2014     Service by: ☑ CM/ECF    ☐ Other [Attach proof of service]

**Form T-1080** (rev. 12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                          :
                                                   :
                            *Appellee*,            :
                                                   :
            v.                                     :
                                                   : No. 14-2141
TODD NEWMAN, ANTHONY CHIASSON,                     :
JON HORVATH, DANNY KUO,                            : DECLARATION IN SUPPORT
HYUNG G. LIM,                                      : OF MOTION TO HOLD
                                                   : APPEAL IN ABEYANCE
                            *Defendants*,          :
                                                   :
MICHAEL STEINBERG,                                 :
                                                   :
                            *Defendant-Appellant*. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

          BARRY H. BERKE, pursuant to 28 U.S.C. § 1746, hereby declares as

follows:

          1.       I am an attorney duly admitted to practice law in the State of

New York and before this Court.  I am a member of the law firm Kramer Levin

Naftalis & Frankel LLP, counsel for Defendant-Appellant Michael Steinberg in

this appeal.  I make this declaration in support of Mr. Steinberg's unopposed

motion for an order holding his appeal in abeyance pending this Court's decision in

*United States v. Newman*, No. 13-1837, and *United States v. Newman (Chiasson)*,

No. 13-1917 (collectively, "*Newman/Chiasson*").  Mr. Steinberg's opening brief is

currently due on September 22, 2014.

2.      As explained in further detail below, the factual and legal issues presented by the *Steinberg* and *Newman*/*Chiasson* cases overlap significantly. Staying the current briefing schedule in this case would be most efficient for the Court and the parties because one of the legal issues that could result in reversal of Mr. Steinberg's convictions – whether in an insider trading case the government must prove, among other things, that a remote tippee defendant knew that the company insider disclosed confidential information in exchange for a personal benefit– has also been briefed in the *Newman*/*Chiasson* case, which was argued and submitted several months ago.

3.      The government has advised me that it does not oppose Mr. Steinberg's request to hold his appeal in abeyance pending this Court's decision in the *Newman*/*Chiasson* appeal.

**The *Newman* and *Chiasson* Cases in the District Court**

4.      On August 28, 2012, a grand jury charged Todd Newman and Anthony Chiasson with committing securities fraud and conspiring to commit securities fraud based on allegations that, on behalf of the hedge funds for which they served as a portfolio managers, they traded securities of Dell Inc. ("Dell") and Nvidia Corp. ("Nvidia") while in possession of material nonpublic information disclosed by corporate insiders in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. §§ 240.10b-5 and 240.10b5-2. Specifically, the indictment alleged that the

- 2 -

defendants traded on information their employees had obtained from analysts at other investment firms. According to the government, those analysts obtained the information from other individuals, who received the information directly or indirectly from Dell and Nvidia insiders.

5. At the joint trial of Messrs. Newman and Chiasson, Judge Sullivan instructed the jury that the government had to prove that the defendants knew the inside information was disclosed by the insiders in breach of a duty of trust and confidence, and rejected the defendants' request that the jury be charged that the defendants had to know that the insiders received a personal benefit in exchange for their improper disclosures. (*Newman* Tr. 3346-53, 3594-605).[1]

6. On December 17, 2012, a jury found Messrs. Newman and Chiasson guilty on all counts. Judgments were entered in May 2013, and Messrs. Newman and Chiasson timely appealed their convictions and sentences to this Court.

7. Judge Sullivan denied Newman's and Chiasson's requests for bail pending appeal. However, a panel of this Court reversed that denial and granted defendants' Rule 9(b) motion from the bench, agreeing that the issue of whether, to be guilty of insider trading, a tippee must know of an insider's personal

---

[1]   All cited transcript pages from the *Newman* trial are attached hereto as Exhibit A.

KL3 2982871.1

benefit presented a substantial question of law likely to result in reversal or a new trial.  Order, *Newman* (2d Cir. June 21, 2013); *see also* 18 U.S.C. § 3143(b)(1)(B).  Subsequently, a separate panel noted that this Court had "yet to decide whether a remote tippee must know that the original tipper received a personal benefit in return for revealing inside information."  *United States v. Whitman*, 555 F. App'x 98, 106 (2d Cir. 2014).

       8.    This Court heard oral argument in *Newman*/*Chiasson* on April 22, 2014.[2]

**The *Steinberg* Case in the District Court**

       9.    On March 29, 2013, following the *Newman*/*Chiasson* trial, the government charged Mr. Steinberg in a superseding indictment with unlawfully trading securities based on fourth-hand information that his research analyst, Jon Horvath, had obtained from analysts at other investment firms.  The *Newman*/*Chiasson* and *Steinberg* cases included the same "tipping chain" of analysts who obtained the information from other individuals who, in turn, obtained that information from Dell and Nvidia insiders.

       10.    At Mr. Steinberg's trial – and just as Messrs. Newman and Chiasson had done – Mr. Steinberg asked the district court to instruct the jury that, to find him guilty of insider trading, the government must prove that he knew that

---

[2]   An unofficial transcription of the *Newman*/*Chiasson* oral argument is attached hereto as Exhibit B.

an insider breached a duty of trust or confidence "in exchange for a personal

benefit to the insider."  *See* Docket No. 309 (Proposed Joint Requests to Charge) at

15-16 & n.8; *id.* at 16-18, 22-26, 31.  Additionally, in a supplemental submission,

Mr. Steinberg objected to the district court's decision to omit from its jury charge

any instruction relating to proof of knowledge of a benefit.  Docket No. 323 (Dec.

15, 2013 letter from Barry H. Berke) at 3.  In response, the district court stated that,

during the trial of Messrs. Newman and Chiasson, it had "already ruled on" the

proposed instruction of a "tippee's knowledge of the personal benefit" and was

"not going to revisit" the issue.  (Tr. 3442).[3]

        11.    The district court ultimately instructed the jury that the law

prohibits "trading in securities based on material nonpublic information if the

person knows that the material nonpublic information was intended to be kept

confidential, and knows that the information was disclosed in breach of a duty of

trust or confidence."  (Tr. 3697).  While the district court further instructed the jury

that it would have to find that the insiders "personally benefited in some way,

indirectly or directly, from the disclosure," the court did not require the jury to find

that Mr. Steinberg knew about any such personal benefit. (Tr. 3699-3700).

---

[3]    All cited transcript pages from Mr. Steinberg's trial are attached hereto as
Exhibit C.

KL3 2982871.1

12.     On December 18, 2013, the jury found Mr. Steinberg guilty of all charges. Judge Sullivan sentenced Mr. Steinberg to 42 months' imprisonment on May 16, 2014 and entered judgment three days later.

13.     Recognizing that the "knowledge of personal benefit" issue was pending before this Court in *Newman*/*Chiasson*, Judge Sullivan granted Mr. Steinberg's unopposed motion for release pending his appeal. Mr. Steinberg timely filed a Notice of Appeal, and his opening brief and appendix are due to this Court on September 22, 2014.

**The Pending Appeals in This Court**

14.     This case and the *Newman*/*Chiasson* appeal share the same substantial question of law—a question that this Court has found sufficiently viable that it warrants bail pending appeal. Each case raises the question whether the jury should have been instructed that to find a remote tippee guilty of insider trading, the government had to prove, among other things, that the tippee knew that a corporate insider disclosed information in exchange for personal benefit. And if this Court agrees with appellants that reversible error occurred, the remaining question in each case will be whether the district court should enter judgments of acquittal or proceed with new trials on remand.[4]

---

[4]   Mr. Steinberg intends to advance additional arguments for reversal in his appeal, but they are not directly relevant to this application.

- 6 -

15.    Following the oral argument in *Newman/Chiasson*, a civil case, an administrative proceeding, and a criminal sentencing have all been stayed in recognition of the potential impact of the *Newman/Chiasson* appellate decision. *See* Order, *SEC v. Steinberg*, No. 13-cv-2082 (HB) (S.D.N.Y. May 12, 2014) (granting application for stay based on joint letter from the SEC and Mr. Steinberg stating, *inter alia,* that "if the Second Circuit reverses or vacates the convictions of Messrs. Newman and Chiasson, it likely will grant the same relief to Mr. Steinberg after his conviction is entered and appealed") (attached hereto as Ex. D); *In the Matter of Steven A. Cohen*, Administrative Proceeding No. 3-15382 (May 29, 2014) (granting application of U.S. Attorney's Office to stay SEC administrative proceeding against Steven A. Cohen, based on government's argument that the SEC's allegations against Mr. Cohen are "premised" on the presumption that Mr. Steinberg engaged in criminality and  thus a stay was "necessary" because Mr. Steinberg's appeal would raise the "precise legal issue" that this Court is expected to decide in the *Newman*/*Chiasson* case) (order and application attached hereto as Ex. E); Transcript of Hearing, *United States v. Kuo*, No. 12 Cr. 121 (RJS) (S.D.N.Y. July 1, 2014), at 35 (Judge Sullivan adjourning the July 1, 2014 sentencing of cooperating witness Danny Kuo until after this Court renders its decision in the *Newman*/*Chiasson* appeal) (attached hereto as Ex. F).

- 7 -

**The Relief Sought by This Unopposed Motion**

16.     Because the *Newman*/*Chiasson* and *Steinberg* cases indisputably present the same important and potentially outcome-dispositive legal issue, and because the *Newman*/*Chiasson* case is ripe for decision, it is in the interest of judicial economy to postpone briefing in Mr. Steinberg's case until this Court clarifies the elements of tippee liability.

17.     Three related grounds support holding Mr. Steinberg's appeal in abeyance.  First, such an order would spare Mr. Steinberg the burden of presenting (and would spare this Court the burden of considering) questions this Court is already positioned to address in an appeal that has been submitted for decision.  Second, it would allow the parties to brief the issues in Mr. Steinberg's appeal with the benefit of knowing the effect of the *Newman*/*Chiasson* decision on those issues.  Finally, an abeyance would allow the panel that is assigned to Mr. Steinberg's appeal the opportunity to consider and decide the effect of the decision in *Newman*/*Chiasson* on the issues that Mr. Steinberg's appeal raises.  *See Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976) ("In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it.").

18.     This Court has repeatedly held appeals in abeyance where, as here, another pending appeal (i) is closer to a decision and (ii) may significantly

- 8 -

inform the merits of the issues presented. *See, e.g.*, Order, *Pedersen v. Office of Prof'l Mgmt.*, Nos. 12-3273 & 12-3872 (2d Cir. May 16, 2013) (granting motion to hold appeal in abeyance pending Supreme Court's decision where movants argued that a stay would allow the parties to provide the court of appeals with "briefing that takes into account the Supreme Court's opinion")[5]; Order, *United States v. Miller*, No. 05-1203 (2d Cir. Aug. 15, 2005) (holding appeal in abeyance pending this Court's issuance of decisions in *United States v. Amerson*, No. 05-1423, and *United States v. Graves*, No. 05-1063); Order, *United States v. Grullon-Jiminez*, No. 05-1170 (2d Cir. Aug. 8, 2005) (same); Order, *In re Herald, Primeo & Thema Funds Sec. Litig.*, No. 12-184-cv (2d Cir. Apr. 6, 2012) (granting appellants' motion in consolidated appeal to hold briefing in abeyance pending decision in lead appeal where question presented by subsidiary appeal was also presented by lead appeal).

WHEREFORE, Mr. Steinberg respectfully requests that his appeal, including the briefing schedule, be held in abeyance pending this Court's decision in *United States v. Newman*, No. 13-1837, and *United States v. Newman (Chiasson)*, No. 13-1917. As noted at the outset, the government, by Assistant U.S. Attorney Harry A. Chernoff, does not oppose this request.

---

[5] The *Pedersen* order and motion are attached hereto as Exhibit G.

KL3 2982871.1

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 5, 2014
New York, New York

/s/ Barry H. Berke
BARRY H. BERKE
*Attorney for Defendant-Appellant*
*Michael Steinberg*

- 10 -

**EXHIBIT  F**

# UNITED STATES COURT OF APPEALS
# FOR THE
# SECOND CIRCUIT

———————

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 28th day of November, two thousand and twelve.

Before:     Ralph K. Winter,
                    *Circuit Judge*.
_____

Joanne Pedersen, *et al.*,

Plaintiffs-Appellees,

        v.

Office of Personnel Management, *et al.*,

Defendants-Appellants.
_____

**ORDER**

Docket Nos. 12-3273(L), 12-3872(Con)

      IT IS HEREBY ORDERED that the motion by the Executive Branch defendants-appellants to suspend the briefing schedule is GRANTED to the following extent: If certiorari is denied, movants may file their brief no later than 14 days after the denial, no further extensions.  If certiorari is granted, the parties shall consult with staff attorneys as to whether an agreement to hold the case in abeyance can be reached.  If an agreement cannot be reached, a motion to hold the cases in abeyance shall be referred to the court.

For the Court:

Catherine O'Hagan Wolfe,
Clerk of Court



**EXHIBIT  G**

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

No. 12-5217                                    September Term, 2012

1:07-cv-00812-RMC

Filed On: February 15, 2013 [1420820]

Menominee Indian Tribe of Wisconsin,

      Appellant

   v.

United States of America, et al.,

      Appellees

## O R D E R

Upon consideration of the unopposed motion for extension of time to file motion to govern further proceedings, and the lodged joint motion to govern and continue case in abeyance, it is

**ORDERED** that the motion for extension of time be granted.  The Clerk is directed to file the lodged motion to govern.  It is

**FURTHER ORDERED** that the motion to govern and continue case in abeyance be granted, and this case remain held in abeyance pending further order of the court.

The parties are directed to file new motions to govern further proceedings in this case within 14 days of the final disposition by the United States Court of Appeals for the Federal Circuit of No. 2011-1485, Arctic Slope Native Ass'n, Ltd. v. Sebelius (pet. for reh'g en banc filed Feb. 7, 2013).

FOR THE COURT:
Mark J. Langer, Clerk

BY:   /s/
     Mark A. Butler
     Deputy Clerk